O'CONNOR, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, April 12, 1904.

1. **WITNESS: Credibility: Cross-Examination.** On cross-examination the credibility of a witness may properly be impaired by asking him questions which would tend to impugn his character for morality, virtue, honesty or veracity, such as whether he has ever been in jail.

2. ———: ———: ———. But a question asked a female witness to show that she was arrested and tried for whipping another woman, was properly excluded, because not tending to affect her honesty, virtue or truth.

3. ———: ———: **Record of Conviction.** The record of a police court showing conviction of the witness for violation of a city ordinance, offered for the purpose of discrediting the witness, was properly excluded; only the record of a former conviction of a crime which the law denounces as infamous, is admissible for such purpose.

Appeal from Washington Circuit Court.—*Hon. Frank R. Dearing,* Judge.

AFFIRMED.

*Sears Lehmann* and *George W. Easley* for appellant.

(1)   When a party takes the stand as a witness in his own behalf he may be cross-examined as to his antecedents and character as affecting his credibility. Georgia v. Bond, 72 N. W. 232; State v. Greenbury, 53 Pac. 61; Muller v. St. Louis Hosp. Assn., 5 Mo. App. 390; Same v. Same, 73 Mo. 242.   (2)   The court erred in refusing to allow the defendant to introduce in evidence the transcripts of certain proceedings in the police courts in of which the plaintiff was a defendant and was convicted.   State v. Sauer, 42 Minn. 258; Quigley v. Turner, 150 Mass. 108.

*James J. O'Donohoe* and *E. M. Dearing* for respondent.

(1)   Whether the respondent whipped a lady named Spior and was fined for the same in the police court, is foreign to the issues in this case.   And it was properly excluded by the court.   Because: "The contradictory statements which may be shown for the purpose of impeaching a witness must be of facts pertinent to the issue."   Roe v. Bank of Versailles, 167 Mo. 426; Hamburger v. Rinkel, 164 Mo. 398.   (2)   And whether the respondent whipped a lady named Spior, and was fined in the police court for doing so is, for the purposes of this case, quite immaterial.   "A witness can not be impeached by contradicting him on an immaterial issue."   Corder v. Crimm, 60 Mo. App. 423; State v. Bank, 10 Mo. App. 482.   (3)   The court properly excluded the so-called transcripts offered in evidence by appellants.   Said transcripts could at best only show a violation of a city ordinance.   And, "Evidence of a former conviction of a crime is not admissible for the purpose of discrediting a witness, unless the conviction was an offense which the law denounces as infamous."   State v. Manning, 87 Mo. App. 78.   (4)   These matters are largely within the discretion of the trial court.   In this case the court

used his discretion wisely. Becker v. Schutte, 85 Mo. App. 57; Hirsch & Co. v. Green, 83 Mo. App. 486.

STATEMENT.

This is a personal injury case. The petition alleges, in substance, that plaintiff was a passenger on one of the defendant's street cars travelling south on Grand avenue, in the city of St. Louis; that her destination was Caroline street; that when said street was reached, the car was stopped to allow her to alight which she attempted to do, but before she had time to do so, and while she was in the act of alighting, the servants of defendant in charge of the car started it with a jerk and jolt whereby she was violently thrown upon the street sustaining injuries (enumerated in the petition).

The answer was a general denial and the plea of contributory negligence.

Plaintiff, the only witness offered as to the occurrence, testified, in substance, that on the evening of January 22, 1903, she was a passenger on her way home on a south-bound Grand avenue car of the defendant. She reached Caroline street where she wished to alight, at about six o'clock, and in response to her signal, the car was stopped. As she was in the act of alighting the car started with a jerk and threw her to the street and her left ankle was sprained, hip hurt, her whole body bruised and her female organs affected. She lay in the street about five minutes and then got up and hobbled home, a distance of three blocks. The car from which she was thrown was tolerably well filled with passengers, but did not stop after she was thrown to the ground. While she was lying there no other car came by and nobody came to her assistance. She was lying just across the street from a drugstore and near the Marion-Sims medical college.

On cross-examination she denied ever having had a miscarriage or ever having had an operation performed on her.

She was asked if she was ever arrested and fined in the police court, which question was objected to by the plaintiff and sustained by the court, and the defendant duly excepted.

Before being married to O'Connor she had lived for a long time with another man as his wife, although she was never really married to him.

Other witnesses testified in regard to her ankle being sprained and to the bruises on her left side. Her attending physician testified that she had ovarian trouble which would necessitate an operation and which might have been caused by a fall on the street. His opinion in this respect was corroborated by one other physician; but was controverted by the evidence of physicians who had examined the plaintiff under an order of the court.

Defendant offered evidence tending to show that plaintiff did not fall from the car at all and was not injured in any manner whatever when alighting from the car, if she was on the car at all.

Etta Pike was then introduced, who testified that she had nursed the plaintiff when she had had a miscarriage or an abortion, and that plaintiff had told her that a doctor had brought an abortion on plaintiff because she and her husband did not get along very well and she did not want any more children. The doctor that performed the abortion was dead.

The defendant then read in evidence a clause of the petition of plaintiff's husband for divorce, which petition plaintiff did not deny. This clause charged plaintiff with having a criminal operation performed on her to produce an abortion. Defendant then offered a judgment of the police court fining plaintiff ten dollars. Also the transcript of another judgment for a breach of the peace by the plaintiff. On the objection of the plaintiff these judgments were excluded. The defendant also offered in evidence the report of Dr. Tupper to

Judge Talty on his examination of the plaintiff and, on objections of the plaintiff, this was excluded.

Josie Harter then testified that she had known Mrs. O'Connor for eight years and had heard plaintiff speak of having had a miscarriage.

Defendant asked the plaintiff the following questions on cross-examination:

"Q. Did you ever know a lady named Spior? A. Yes.

"Q.. You whipped her once, and I will ask you if she didn't have you arrested and try you in the police court?

"Q. You were never fined by the police judge in the police court in the city of St. Louis?"

An objection to the last two questions was sustained.

For the purpose of further discrediting the plaintiff, defendant offered to read in evidence a transcript from the docket of a police court of the city of St. Louis showing plaintiff had been tried, found guilty and fined ten dollars for a violation of a city ordinance. On objection of plaintiff the transcript was excluded. Verdict and judgment in the sum of five hundred dollars for plaintiff. Defendant appealed.

BLAND, P. J. (after stating the facts).—The error complained of by the defendant is the action of the trial court in excluding the transcript from the docket of the police court and sustaining the objections to the following questions propounded to plaintiff on her cross-examination: First: "You whipped her (Mrs. Spior) once, and I will ask you if she didn't have you arrested and try you in the police court?" Second: "You were never fined by the police judge in the police court in the city of St. Louis?" Defendant does not set out the answers he expected to elicit from plaintiff to the above questions, and for this reason we might dismiss the matter without comment. But we will anticipate what

defendant expected the answers to these questions would be, had plaintiff been required to make answer. The fair inference to be drawn from the questions is that if plaintiff had answered them, she would have said that she had whipped Mrs. Spior, that the latter had her arrested for the assault and that she had been fined therefor by a police justice. These questions were evidently asked for the purpose of discrediting plaintiff as a witness. The jury, being the exclusive judges of the degree of credibility to be attached to the testimony of a witness, his credibility is always open to inquiry within legal rules and limitations. It is the law that on cross-examination the credibility of a witness may be affected, impaired or totally annihilated by showing from his own mouth his moral rottenness or total depravity, and for this purpose he may be asked on cross-examination, if he was ever in jail or State's prison and how much of his life had been passed therein. Real v. The People, 42 N. Y. 270. In Wentworth v. Buhler, 3 E. D. Smith 305, WOODRUFF, J., ruled that "a question on cross-examination that is relevant to the credibility of the witness is proper." This court, in Miller v. St. Louis Hospital Association, 5 Mo. App. l. c. 401, approvingly quoted the following from Stevens' Digest, Laws of Evidence 123: "When a witness is cross-examined, he may in addition to the questions hereinbefore referred to, be asked any questions which tend to test his accuracy, veracity, or credibility, or to shake his credit by injuring his character. He may be compelled to answer any such question, however irrelevant it may be to the facts in issue, and however disgraceful the answer may be to himself, except where the answer might expose him to a criminal charge." The court further said: "But the extent of the cross-examination of this nature is somewhat in the discretion of the court, and must necessarily be so, to prevent abuse." The opinion in this case was approved by the Supreme Court. See same case, 73 Mo. 242.

The discretion which the court may exercise in a cross-examination of this nature, we apprehend, does not authorize the court to deny the right to make the cross-examination at all, but to put an end to it when, in the opinion of the court, it has been carried far enough and to permit it to go on would be oppressive or useless. The questions, to be relevant, must be such, if answered in the affirmative, as will tend to shake the credibility of the witness by injuring his character. If, therefore, the questions do not tend to impugn the character of the witness for morality, virtue or honesty, or for truth and veracity they would be irrelevant and should be excluded. Assuming then, that the plaintiff, if she had been required to answer the questions, would have said she did whip Mrs. Spior and that she was taken before a police judge and fined for assault and battery, would her answers have injured her character for morality, honesty or virtue, or for truth and veracity? We think none of these elements of character are involved in a mere assault. At most, the evidence would have shown that plaintiff was a woman of ill temper, rough and unladylike, but would not warrant the inference that she was immoral, dishonest or untruthful. For this reason we do not think the trial judge erred in sustaining the objections to the questions.

In respect to the exclusion of the transcript from the docket of the police justice, we need only repeat what has often been said by the Supreme Court, that is, that a record of a court of a former conviction of crime is not admissible for the purpose of discrediting a witness, unless the conviction was of an offense the law denounces as infamous. Fanning v. State, 14 Mo. 386; State v. Taylor, 98 Mo. 240; State v. Donnelly, 130 Mo. 642; Gardner v. Railway, 135 Mo. 90; State v. Grant, 144 Mo. 56.

The errors complained of we think are without substantial merit and the judgment is affirmed. *Reyburn* and *Goode, JJ.,* concur.