# MYRON E. ROSS, Respondent, v. GRAND PANTS COMPANY, Appellant.

### Kansas City Court of Appeals, April 7, 1913.

1. **MASTER AND SERVANT: Damages: Wrongful Discharge: Jury Question.** Where a servant sues for damages for a wrongful discharge, and the master defends on the ground that the discharge was justified because of the servant's alleged rudeness, discourtesy and impoliteness to the master and to customers, all of which the servant denies, the question whether the discharge was wrongful or not is one for the jury.

2. ————: ————: ————: ————: **Servant's Behavior.** Although wilful rudeness, discourtesy and impoliteness to customers on the part of a servant is a good ground for the discharge of such servant by the master, yet, if the conduct of the servant was authorized by the master and countenanced by him at the time, the latter cannot afterwards rely on such authorized conduct as a ground for discharge.

3. ————: ————: ————: ————. Although such behavior on the part of a servant toward a master is good ground for discharge, yet if the alleged misbehavior was provoked by the master, and the conduct of the master afforded reasonable cause for the alleged conduct of the servant, then the latter's conduct toward the master, under such circumstances, is not ground for a discharge. Whether there was reasonable cause is a question for the jury.

4. ————: **Evidence: Character.** Where the character of a witness has been attacked by proof of a conviction of an offense, the party offering the witness may then prove his general reputation, not for the purpose of disproving the conviction but to support his credibility.

5. ————: **Instruction: Defining Terms.** Where an instruction contains a word or a phrase which the other party wants defined, such party should request a definition of that word or phrase. This does not apply to every instruction but it does to such terms as "reasonable care," "reasonable cause," and etc., especially when the party complaining of the lack of definition has used the same terms without defining them or without asking an instruction which defines them.

6. ————: ————: **Measure of Damages.** In a suit brought by a servant for a wrongful discharge, the measure of damages is the amount due for the whole contract period less the amount earned from other sources until the time of trial and the prospective earnings of the servant to the end of the contract period.

Appeal from Jackson Circuit Court.—*Hon. Jas. E. Goodrich*, Judge.

AFFIRMED.

*G. B. Silverman* for appellant.

*Joseph P. Fontron* for respondent.

TRIMBLE, J.—This in an action by an employee to recover damages for a wrongful discharge. Plaintiff was employed by defendant to act as the general manager of its selling department in the tailoring business. The employment was for a year beginning October 7, 1907, and at a salary of forty dollars per week to be paid weekly during the whole of said time. On the 5th day of December, 1907, plaintiff was discharged without his consent. The suit was instituted December 24, 1909, and the trial had July 2, 1908, three months and five days before the expiration of the employment term. All the foregoing facts are admitted. The controversy at the trial was whether or not there was just cause for the discharge. The defendant claimed that the plaintiff was discharged because he was rude, discourteous and insolent to defendant's president, as well as to the other employees of defendant and to customers; because plaintiff disturbed the peace and quiet of said customers; and because he had attempted to disorganize defendant's business and its systematic working, and had tried to induce defendant's employees to quit their positions. Plaintiff denied this, claiming that his discharge was without just cause or excuse.

The issue thus raised was submitted to the jury resulting in a finding for plaintiff with a verdict against defendant for $810, and judgment thereon was duly rendered. Unless reversible error was committed in the trial it is our duty to affirm this judgment, since

it is not within our province to weigh the evidence or to pass on the facts.

The appeal was taken to the Supreme Court on the ground that a constitutional question relating to trial by jury was involved. That tribunal, after considering the case, held that no such question was involved and transferred the case to this court. [145 S. W. 410.]

Defendant alleges error because the trial court admitted, over defendant's objection, the testimony of two of plaintiff's witnesses in rebuttal who testified to plaintiff's general reputation for morality and truthfulness.

In civil cases the character of the parties is not relevant, nor is testimony concerning it admissible, unless character is in issue by the nature of the proceeding, or unless it is first brought in issue by an attack thereon from the other side. On cross-examination the plaintiff had been asked if he had not been convicted and fined $100 in the Kansas City Police Court for disturbing the peace. He admitted that he had. In addition to this admission, the defendant, in putting in its testimony, offered in evidence the record of said police court showing such conviction. This opened the door for plaintiff to introduce evidence concerning his general reputation. [2 Wig. on Ev., sec. 1106; Jones on Ev., sec. 867; Walker v. Insurance Company, 62 Mo. App. 209; Gertz v. Railroad, Co., 137 Mass. 77; Paine v. Tilden, 20 Vt. 554; Isler v. Dewey, 71 Cal. 14.] Hence the admission of such testimony was not error.

The next assignment is that the court erred in giving plaintiff's instruction No. 3 which told the jury that if plaintiff was rude, discourteous, and impolite to defendant's president, yet if he had reasonable cause for so being, such behavior toward the president would not justify plaintiff's discharge. Complaint is made that this rule does not apply in a case

of this kind. In other words defendant appears to contend that no matter what the master may have done to provoke his servant to rude and discourteous behavior, if the servant gave way to it, he thereby furnished the master good reason for discharging him. Stated differently, and in its last analysis this means, that although the master may *goad* the servant into desperation, yet if the servant does not meekly submit, he thereby forfeits all right to retain his place under his contract. This would permit a master, who was desirous of breaking a contract with his servant, to so treat the servant as to drive or compel him to give the master the right to discharge him. The instruction is not erroneous on the ground just stated. The next objection to the instruction is that the words "reasonable cause" are not defined. But defendant asked and was given an instruction on the same point which used the words "good cause" without definition, and no instruction defining the words "reasonable cause" was asked by defendant. It has been held that a failure to define "reasonable care and diligence" is not reversible error where no instruction embodying such a definition has been asked. [Johnson v. Missouri Pacific Railway Co., 96 Mo. 340.] Where an instruction contains a word or a phrase which a party wishes to have defined, such party should request a definition of that word or phrase. [Crapson v. Wallace, 81 Mo. App. 680, l. c. 684.] Another complaint against this instruction is, that it tells the jury that if plaintiff was rude, discourteous and impolite to the president of the company, this justified the defendant company in discharging him for *any* rudeness, etc., no matter to whom, when the answer alleges and the evidence shows that rudeness to customers and others was also relied on as justification for the discharge. The instruction, however, does not apply to any rudeness other than the rudeness to the president. The plaintiff's evidence tended to show that if there was

Ross v. Grand Pants Co.

any rudeness to customers it was at the command and direction of the president, who was practically the owner of all the stock of the defendant company and its sole active administrative officer present in the store at the time of such alleged rudeness. The instruction does not apply to any rudeness to customers but only to rudeness alleged by defendant to have been displayed to the president.

The final assignment of error is in regard to the measure of damages. The court's instruction on this point was as follows:

"The court instructs the jury that if you find for the plaintiff, you will fix your verdict for the whole amount that would have been due the plaintiff if he had continued to work for the defendant under the contract sued upon, from the date of his discharge until the expiration of the contract after allowing a credit for anything which the evidence shows the defendant may have paid him since that time and for anything which plaintiff may have earned from services rendered to others, and after allowing a further credit of an amount equal to what the jury may believe from the evidence he will be able to earn between now and the date of the expiration of said contract."

Appellant's contention is that when the trial takes place *before* the expiration of the stipulated term of employment the servant ought to be allowed to recover damages only to the time of trial, subject to the reduction of the sums the servant has earned or might have earned between the time of the discharge and the time of trial; but that in this case the jury were instructed to give damages for the entire period up to the expiration of the contract, which expiration was *after* the trial.

Two Federal cases and a case in Wisconsin are cited in support of this view: Schroeder v. Cal. Co., 95 Fed. 296; Darst v. Mathieson Works, 81 Fed. 284;

and Gordon v. Brewster, 7 Wis. 309. A careful analysis of these cases will disclose that the reason those courts laid down the rule contended for by appellant was because, owing to the length of time the contracts had to run and the lack of evidence as to what plaintiff's loss would be during the portion of the unexpired term after the trial, the damages for such portion would be largely speculative. In the case we are considering, however, the unexpired term was only three months, and the evidence was amply sufficient to enable the jury to determine what the probable loss for the remaining three months of the term would be. It is true that Wood on Master and Servant at page 250 says, that the drift of American decisions is to the effect that, in a suit brought before the expiration of the term, the judgment is limited to the servant's actual loss up to the day of trial, and that in a case, where there was a prospect of a considerable loss of time, a suit brought before the expiration of the term would be an unsafe experiment; yet he also says on page 237 that a servant may sue for a breach of the contract and recover his *probable* damages from the breach, or, he may, in some cases, wait until the term has ended and sue for the *actual* damages he has sustained. It would seem that if he can sue for his probable damages, the only thing to prevent his recovery for loss sustained after the trial and to the end of the contract term would be the inability to ascertain with any certainty what the damages would be for that portion of the term elapsing after the trial. But whatever may be the rule in other jurisdictions, the rule in Missouri is the same as that followed in England. This allows a servant, even in a suit brought and tried before the expiration of the contract, to recover for the whole contract period, less the amount earned from other sources until the time of trial and the prospective earnings to the end of the contract period. [Boland v. Glendale Quarry Co., 127 Mo. 520, and cases

therein cited.] It is true in the Boland case the trial is stated on page 522 to have taken place January 9, 1894, which, if correct, would be after the expiration of the contract term which ended on March 31, 1893. But inasmuch as the instruction set out on page 523 speaks of the time between "*now* and the 31st day of March, 1893," and inasmuch as the whole opinion is based on the fact that the trial did take place before the end of the term, we are constrained to believe that the year "1894" was a mere clerical error and should have been "1893." This would appear also to be the case because the suit was instituted September 10, 1892, and was determined in the Supreme Court in 1894, so that it must have been tried in 1893. And on page 523 the opinion says the instruction was assailed because it permitted plaintiff to recover for the whole contract period less his earnings up to the day of trial *and his prospective earnings to the end of the contract.* In Miller v. Boot and Shoe Company, 26 Mo. App. 57, one of the many cases cited with approval by the Supreme Court in the Boland case, the trial was had before the end of the term and the rule as contended for by respondent was followed. Other Missouri cases announce the same measure of damages: Estes v. Desmoyers Shoe Co., 155 Mo. 577; Lambert v. Hartshorne, 65 Mo. 549. And while the date of trial is not clearly shown, yet if it was intended to make the rule announced apply only in those cases in which the trial was had after the expiration of the contract, this distinction would have been made to clearly appear. It must be held, therefore, that the measure of damages contained in the instruction given for plaintiff in this case is correct according to the rule announced by the Missouri courts. But if no ruling on the question had been made, we see no reason for limiting the damages to the day of trial in a case where the evidence is amply sufficient to enable the jury to

say what the loss will be for the portion of term elapsing after the trial.

The case having been tried without reversible error the finding of the jury and the judgment of the trial court based thereon must not be disturbed. Hence judgment affirmed. All concur.