## S. L. MEREDITH, Respondent, v. CHAS. W. WHIL-LOCK, Appellant.

### Springfield Court of Appeals, July 28, 1913.

1. WITNESSES: Credibility: Conviction of Crime: Violation of City Ordinance. A violation of a city ordinance is not a criminal offense within the provisions of Sec. 6383, R. S. 1909, which permits proof of the conviction of a criminal offense of a witness to affect his credibility.

2. APPEAL AND ERROR: Admission of Improper Evidence: Reversal as to Punitive Damages: Not as to Actual. Although it was error to permit a plaintiff, in his action for assault and battery, to prove defendant had been guilty of violating a city ordinance, yet it was not ground for reversing a judgment for actual damages which was shown by the evidence to be fully justified; but, because of the error, the judgment for punitive damages is set aside.

3. PLEADING: Assault and Battery: Petition. In an action for damages for assault and battery, the petition and a motion by defendant to strike out certain parts thereof, are examined. *Held,* defendant's motion was properly overruled.

4. PLEADING: Petition: Amendment. In an action for assault and battery an amendment to the petition by interlineation is examined and *held* properly allowed.

Appeal from St. Clair County Circuit Court.—*Hon. C. A. Calvird,* Judge.

AFFIRMED *(on condition).*

*W. W. Wood, George H. Daniel* and *Rechow & Pufahl* for appellant.

(1)   The defendant's objection to the amending of the plaintiff's petition by interlineation should have been sustained.   (2)   The court admitted incompetent evidence over defendant's objection in permitting the plaintiff to cross-examine defendant about charges and convictions in the police court.   O'Connor v. Transit Co., 106 Mo. App. 215; Koch v. State, 3 L. R. A. (N. S.) 1896.   (3)   The statute provides that any person who has been convicted of a "criminal" offense may be compelled upon cross-examination to testify relative to such conviction.   State v. Blitz, 171 Mo. 539.   (4) A proceeding under a city ordinance is a civil and not "a criminal" proceeding.   City of Marshall v. Geo. W. Standard, 24 Mo. App. 192; Ex parte Hollwedell, 74 Mo. 401; City of Gallatin v. Fannin, 128 Mo. App. 324; State v. Dineen, 203 Mo. 636; St. Louis v. De Lassus, 205 Mo. 578; Koch v. State, 3 L. R. A. (N. S.) 1086; Kansas City v. Clark, 68 Mo. 588; St. Louis v. Knox, 74 Mo. 79; O'Connor v. Transit Co., 106 Mo. App. 215; Caruthersville v. Palsgrove, 155 Mo. App. 564; Carthage v. Bird, 146 Mo. App. 326; City of Mexico v. Harris, 115 Mo. App. 707; City of Gallatin v. Tarwater, 143 Mo. 40; State v. Gustin, 152 Mo. 113; State v. Muir, 86 Mo. App. 642.   (5)   In civil action the character of neither party, until assailed, can be inquired into, unless it is put in issue by the proceeding itself.   Gutzwiller v. Lackman, 23 Mo. 172; Rogers and Gillis v. Troost's Admr., 51 Mo. 470; Dudley v. McCluer, 65 Mo. 241; Vawter v. Hultz, 112 Mo. 633; Black v. Epstein, 221 Mo. 286; Lumber Co. v. Hartman, 45 Mo. App. 647; Grocer v. Targart, 78 Mo. App. 166; Gordon v. Miller, 111 Mo. App. 342; Stewart v. v. Watson, 133 Mo. App. 47; Shoffner v. Fink, 163 Mo. App. 113.

Meredith v. Whillock.

*G. C. Burnside, J. C. Hargus* and *Hamlin & Seawell* for respondent.

(1) The undisputed evidence is, that appellant struck respondent without legal justification or excuse. There was no plea nor evidence of justification, hence the respondent was entitled to a verdict in his favor. Williams v. Williams, 132 Mo. App. 266; Johnson v. Dailey, 136 Mo. App. 539. (2) The amendment to the petition was proper and did not change the issues in the case and the motion to strike was properly overruled. (3) Evidence of defendant's conviction in police court was properly admitted. Secs. 6383, 9340 and 9539, R. S. 1909; State v. Chappell, 179 Mo. 333; State v. Loehr, 93 Mo. 106; State v. Shanks, 150 Mo. App. 372; City v. Moran, 121 Mo. App. 682; City v. Duncan, 238 Mo. 513; State v. Long, 201 Mo. 674; City v. Amelu, 235 Mo. 669; Gardner v. Railroad, 135 Mo. 90.

FARRINGTON, J.—This is an action for damages on account of an assault and battery alleged to have been committed by the appellant upon the respondent in a barber shop at Humansville on November 3, 1911. Upon trial, the jury returned a verdict giving respondent $3000 actual and $100 punitive damages. The defendant below is appellant here.

The petition charged, in substance, that defendant assaulted and beat the plaintiff with his fist in the face and on the head, thereby knocking plaintiff down, and that in falling, plaintiff's head struck some hard substance whereby he was rendered unconscious for several hours and sustained great bodily injuries which confined him to his bed for a considerable time, and that by reason of the battery plaintiff was paralyzed on the right side of his body and head and rendered unable to stand or walk without support, and that he was unable to eat food other than solubles, the tongue refusing to

perform its function because of said paralysis; that by reason of said injuries, plaintiff is a physical and nervous wreck, and will suffer, and remain a paralytic, for the remainder of his lifetime; that throughout life he will be unable to pursue his occupation and will be compelled to expend large sums of money for attendants, medicine and medical attention. Actual damages in the sum of $6500 and punitive damages in the sum of $1000 constitute the prayer.

The answer was merely a general denial.

All the witnesses, including the defendant, testified that defendant struck the plaintiff. Most of the witnesses were men who were in the barber shop at the time the trouble occurred, and each detailed the altercation as it appeared to him, so that the greater part of the record consists of the several recitals of the conversation between the principals which immediately preceded the battery. As there was no plea of justification or excuse, and as the trial court properly instructed the jury that words, however insulting or aggravating, will not justify, excuse or be a just cause for an assault and that such insulting or aggravating words cannot be considered by the jury for the purpose of mitigating or reducing the amount of actual damages, it is unnecessary to set forth the evidence in detail.

The plaintiff testified that he entered the barber shop and immediately engaged in conversation with J. D. Akins who was waiting. They owned adjoining land, and had previously agreed not to have gravel hauled from their land. A creek flowed on or near the line. Their conversation was entirely friendly. It seems that some one had hauled gravel along or near the creek bed. Akins said he didn't want the gravel hauled and plaintiff said he wouldn't allow any one in the future to haul gravel on his land. Plaintiff says he was standing in front of the stove and did not know defendant was in the room until he spoke up (being in

173 Mo. App. 35

the barber chair) and said, "What is it to you? The north bank of the creek is the line," to which plaintiff replied, "No, I guess not." Defendant then offered to bet $100 and plaintiff said that wouldn't change the facts any. Defendant offered to bet $500, whereupon plaintiff said: "Charlie, that is the way with you; whenever anybody disagrees with you, you always want to bet, and you know I don't bet." Plaintiff says that defendant murmured something and plaintiff then said, "Charlie, maybe that is like lots of other things you think you know, that you don't know," to which defendant murmured something which plaintiff did not understand, and then said, "If you ever dispute my word again about that, I'll slap your jaw." Plaintiff answered: "Charlie, you are bigger than I am, but I am not afraid of you." Plaintiff testified that by this time defendant had been shaved and was out of the chair and that he thought the defendant started to get his hat and that he (the plaintiff) turned his face toward Mr. Akins and defendant then struck him in the face. He says the blow dazed him and that he fell back and struck his head against something hard but didn't know whether he fell clear down or not. He was convinced that defendant struck him with the open hand, but the blow made a blood blister on his face. He said he did not see the defendant coming and did not know defendant was going to strike him. Plaintiff weighed about 125 pounds and defendant weighed over 200 pounds. Plaintiff testified he was 58 years af age, and defendant said that he was fifty. The evidence shows that after the altercation, plaintiff complained of hurting in the back of his head, and hot cloths were applied, and that he was then taken to Doctor Russell's office where he remained for over an hour and was then taken home in a carriage. Plaintiff says he remembers very little of what occurred after he was struck. There is no necessity of setting forth his testimony concerning his condition. Suffice it to

say that gradually paralysis came ' on, affecting the
right side of the body and part of his tongue and face.
He was confined to his bed for thirty-seven days and
did not leave the room for sixty days, during all of
which time he was almost helpless. The only two
doctors who testified in the case stated that they had
attended the plaintiff and that considering his condi-
tion and his age the chances for recovery were slight.
Plaintiff testified that thirty years before this he had
rheumatism but never had paralysis and was in good
health prior to this trouble.

Two of plaintiff's witnesses testified that after de-
fendant struck him the plaintiff took hold of a poker
which he put down when defendant told him to do so,
and that *plaintiff* then hit the defendant with his fist.

J. D. Akins testified for the defendant that he
was present and that when defendant offered to bet
$500 plaintiff said, "I don't make my living that way,
Charlie." He also testified that just before defendant
struck the plaintiff, the latter said, "It don't make any
difference if you are a great big bull, I am not afraid
of you." Defendant testified to substantially the
same facts, but plaintiff's witnesses did not hear him
make such a statement.

I.   Appellant, after assigning seven errors, throws
his entire strength in the brief and printed argument
upon one, which is that the trial court erred in permit-
ting the plaintiff to cross-examine the defendant con-
cerning certain proceedings in the Humansville police
court over defendant's objection. The record is as
follows: "Q. I will ask you if on the 11th day of
December, 1907, in the city of Humansville, State of
Missouri, you were convicted before the police judge
of that city of the crime of assaulting one Ed Rath-
borne, and a fine was assessed against you? By Judge
Rechow: If the court please, we object to that ques-
tion, for the reason that it is incompetent, irrelevant;
that you can't ask that kind of question upon a city

ordinance, especially, because proceedings under a city ordinance are the same as civil proceedings, and you can't inquire into private matters of that character; besides, the date is entirely too remote, even if it was a criminal case." The objection was overruled and defendant answered: "I was never tried by a jury in Humansville and convicted. I have plead. guilty to the offense you allege there." He was then asked whether on July 9, 1909, he pleaded guilty to a charge of fighting and a fine was assessed against him in the city of Humansville, to which the same objection was urged and overruled. The witness answered that he would have to know who the party was—that he couldn't say as to the year—whereupon plaintiff's counsel asked if he had pleaded guilty to more than two offenses. Although an objection to this last question was sustained, the witness answered: "Mr. Hiney Cord jumped on me and I knocked him off. I pleaded guilty. I thought I had a right to protect myself. I don't know the year." At the close of all the evidence, defendant's counsel requested that all the questions and answers in relation to defendant having pleaded guilty to certain complaints made against him by the city of Humansville be stricken out and withdrawn from the jury, giving appropriate reasons, which request the court denied.

Prior to 1895, it was the settled law of this State that the only convictions of a witness admissible for the purpose of impeachment were those for a felony or petit larceny. [State v. Blitz, 171 Mo. l. c. 540, 71 S. W. 1027.] However, since 1895, the following section has existed:

"Sec. 6383. Convicts competent witnesses—credibility—conviction proved, how. Any person who has been convicted of a criminal offense is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross-examination, upcn

which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer.''

. Since this enactment, it is held that convictions for misdemeanors as well as felonies may be shown. State v. Blitz, supra.

The real question in this case is whether the violation of a city ordinance is a criminal offence as contemplated by the statute.

Since the case of Kansas City v. Clark, 68 Mo. l. c. 589, was decided, it has been uniformly held in this State that the violation of a city ordinance is not a crime. The proceeding is only a civil suit and has the incidents and attributes merely of a quasi-criminal character. [City of St. Louis v. Knox, 74 Mo. l. c. 81.] In Ex parte Hollwedell, 74 Mo. l. c. 401, the Supreme Court said: ''If the violation of the ordinance for which petitioner was fined is to be regarded as a *criminal offense* in the sense of the constitution there would be much plausibility in the position taken by counsel. Such offenses, however, have never in this State been regarded as criminal.'' In Kansas City v. Neal, 122 Mo. l. c. 234, 26 S. W. 695, the court used this language: ''In Ex parte Hollwedell, 74 Mo. 395, it was held that the violation of a city ordinance is not a criminal offense within the meaning of the Constitution,'' etc. The law is well established that a prosecution for a violation of a city ordinance is a civil action, and this court has often so held.

It is also settled law that an acquittal or conviction under a city ordinance is no bar to a prosecution for the same offense by the State, and vice versa a conviction or acquittal under a State law is no bar to a prosecution for the same offense by a city. [City of Lebanon v. Gordon, 99 Mo. App. l. c. 281, 73 S. W. 222.] The fact that an offense is a misdemeanor under the statutes of the State does not pre-

vent a city from providing for its punishment by ordinance, provided it has charter power to legislate on the subject. [City of De Soto v. Brown, 44 Mo. App. l. c. 152.] Municipal ordinances, though penal, are not criminal statutes. [Sylvester Coal Co. v. City of St. Louis, 130 Mo. l. c. 330, 32 S. W. 649.]

The case of O'Connor v. St. Louis Transit Co., 106 Mo. App. 215, 80 S. W. 304, was a suit for damages for alleged personal injuries resulting from a fall from defendant's street car. On plaintiff's cross-examination, defendant asked: "You whipped her (Mrs. Spior) once, and I will ask you if she didn't have you arrested and try you in the police court?" Also: "You were never fined by the police judge in the police court of the city of St. Louis?" The trial court sustained objections to these questions, and also refused to permit defendant to put in evidence a transcript from the docket of the police court. Without referring to the statute, the appellate court held that as the questions do not impugn the character of the witness for morality, virtue or honesty, or for truth and veracity, they would be irrelevant and should be excluded—that none of these elements of character are involved in a mere assault. As to the exclusion of the transcript from the docket of the police court, the appellate court announced that a record of a court of a former conviction is not admissible for the purpose of discrediting a witness, unless the conviction was of an offense which the law denounces as infamous. Respondent in his brief says that this case was decided prior to the enactment of section 6383, Revised Statutes 1909, but the opinion shows that it was decided in 1904 whereas section 6383 was enacted in 1895 and was section 4680 in the Revised Statutes of 1899. *However, it is our opinion that the question should be solved with section 6383, Revised Statutes 1909, as the premise.*

A case very closely in point arose in the State of Wisconsin which has a statute in all material respects

the same as section 6383, Revised Statutes 1909, and it was held that upon principle and authority the term "criminal. offense" used in the statute includes misdemeanors as well as felonies, but that conviction under a municipal ordinance is not a conviction of a "criminal offense" within the meaning of the statute. [Koch v. State, 106 N. W. 531, 3 L. R. A. (N. S.) 1086.]

In Ross v. Grand Pants Co., 170 Mo. 291, 156 S. W. 92, decided by the Kansas City Court of Appeals, plaintiff sued defendant to recover damages for wrongful discharge. Defendant in cross-examining the plaintiff asked him if he had not been convicted and fined $100 in the Kansas City police court for disturbing the peace and he admitted that he had, and then defendant later introduced in evidence the record of said police court showing such conviction. The plaintiff in rebuttal called two witnesses who over defendant's objection testified to plaintiff's general reputation for morality and truthfulness. The appellate court said that in civil cases the character of parties is not relevant, nor is testimony concerning it admissible, unless character is in issue by the nature of the proceeding, or unless it is first brought in issue by an attack thereon from the other side; and it was held that since plaintiff's character had been attacked by the defendant, this opened the door for plaintiff to introduce evidence concerning his general reputation. The case, therefore, is not a precedent for the point under consideration in the case at bar.

Nor does the case of King City v. Duncan, 238 Mo. 513, 142 S. W. 246, control. The question for decision in that case was whether, after conviction for violation of a city ordinance and upon appeal to the circuit court and trial anew, the jury must be unanimous in their verdict as required in criminal cases. In deciding that question, KENNISH, P. J., used language (pp. 518-519) which indicates that he was of the impression that in such a case, after conviction in

the circuit court, such conviction might be introduced in evidence as a conviction of a "criminal offense" as impeaching evidence. This statement was used argumentatively, and although we have the utmost respect for the opinion of the learned judge, it is a maxim not to be disregarded, that general expressions, if they go beyond the case, may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it are considered in their relations to the case decided, but their possible bearing on all other cases is seldom completely investigated. [Barber Asphalt Paving Co. v. French, 158 Mo. l. c. 539, 58 S. W. 934.] In the case of State ex rel. Major v. Railway Co., 240 Mo. l. c. 53, 144 S. W. 1088, the court said: "It is a well-settled rule that the reasons or discussions of an appellate court in deciding a case are not precedents in other cases in which a different state of facts is at issue." Judge KENNISH in the King City case does not say that a prosecution for a violation of a city ordinance is essentially criminal in character. He says (p. 518) that "it has been persistently maintained that a prosecution for a violation of a city ordinance, and especially when the offense charged is also a criminal offense under the public laws of this State, is essentially criminal in character," etc.

It is true, as argued by respondent, that in a prosecution for the violation of a city ordinance, if the city is successful, the defendant is said to be *guilty* and it is generally understood that he was *convicted*. In State v. Chappell, 179 Mo. l. c. 333, 78 S. W. 585, the Supreme Court speaks of the "conviction" of the defendant before the police judge of the city of Springfield, and in certain statutes the term "convicted" is used in relation to violations of city ordinances. In the case of City of Liberty v. Moran, 121 Mo. App.

682, 97 S. W. 948, the violation of a city ordinance is referred to as an *offense*. Many other cases might be cited where the terminology of the criminal law is used in relation to the violation of city ordinances. This is unavoidable. Judge LAMM in a recent case (St. Louis v. Ameln, 235 Mo. l. c. 678, 139 S. W. 429) said: "A proceeding in the name of a city to recover a penalty for the breach of an ordinance is a criminal one from some points of view. It invokes some of the ideas, terminology and machinery of the criminal law, but it is also a civil proceeding from other viewpoints. The best the law has been able to do is to call it civil or quasi-criminal in character."

Section 4926, Revised Statutes 1909, is as follows:

"Sec. 4926. 'Criminal offense.'—The terms 'crime,' 'offense,' and 'criminal offense,' when used in this or any other statute, shall be construed to mean any offense, as well misdemeanor as felony, for which any punishment by imprisonment or fine, or both, may by *law* be inflicted."

That a city ordinance is not *law* is obvious. "An ordinance is defined to be 'a rule or regulation adopted by a municipal corporation.' [And. Law Dict. p. 738.] The terms 'by-laws,' 'ordinances,' and 'municipal regulations' have substantially the same meaning, and are defined to be 'the laws of the corporate district, made by the authorized body, in distinction from the general laws of the State.' They are local regulations, for the government of the inhabitants of the particular place. [State v. Lee, 29 Minn. 451-453, 13 N. W. 913, and cases cited.] In the case of Baldwin v. City of Philadelphia, 99 Pa. St. 170, the court say that an ordinance of the councils of a municipality, though binding upon the community affected by it, is not a 'law' in the legal sense. It is not prescribed by the supreme power of the State, from which alone a law can emanate, and it is not of general authority throughout the commonwealth." [Mayor, etc., of Rutherford v. Swink, 35

S. W. (Tenn.) 554, 555.    See, also, McInerney v. City
of Denver, 29 Pac. (Colo.) l. c. 519; City of Greeley v.
Hamman, 20 Pac. 1; State v. Fourcade, 40 Am. St.
Rep. (La.) 249.]

We hold that the trial court committed error in
permitting the cross-examination of the defendant as
to his having pleaded guilty to the violation of a city
ordinance.

II.    Was the error prejudicial, entitling defendant
to a new trial?

The verdict was for $3000 actual and $100 punitive
damages.    After reading the evidence in the case, the
actual damages awarded do not point to passion or
prejudice, and certainly cannot with any show of rea-
son be said to be excessive.    The defendant after
pleading merely a general denial, admitted as a witness
in his own behalf that he committed the assault and
battery, and as the facts amply showed that it was an
assault and battery according to all the definitions, the
trial court might well have treated the assault and bat-
tery as proved and submitted no other issues than
those relating to damages.    That is what the trial court
did in the case of Williams v. Williams, 132 Mo. App.
l. c. 273, 111 S. W. 837, where defendant in a suit for
damages for an assault and battery pleaded a general
denial and then admitted the assault and battery.
Since the defendant in this case overturned his only
defense and established a liability against himself as
a matter of law, how could it be said that merely be-
cause the court did put the issue of fact to the jury, the
verdict in plaintiff's favor was in any way influenced
by the reception of incompetent evidence?    This rea-
soning, however, does not apply to that part of the
verdict giving exemplary damages.    Although $100 is
not a considerable sum of money, yet it is a substantial
amount, and in order to dispel all doubt concerning
the question whether the reception of the incompetent

evidence had an influence upon the jury, it is ordered
that the judgment be affirmed only upon condition
that respondent file with the clerk of this court within
ten days from the date on which this opinion is filed a
written remittitur of the total amount of the verdict
for punitive damages; otherwise, the judgment will be
reversed and the cause remanded for a new trial.   The
judgment for actual damages was manifestly for the
right party, and where this is true, even in cases not
nearly so strong, it is held that it should not be re-
versed because some incompetent testimony was ad-
mitted.   [Gardner v. Railway Co., 135 Mo. l. c. 100,
36 S. W.. 214.]

III.   Appellant assigns as error the action of the
trial court in refusing to sustain his motion to strike
out certain parts of the plaintiff's petition, presented
at the beginning of the trial.   The part of the petition
which defendant sought to have stricken out described
plaintiff's alleged condition as a result of the assault
and battery and alleged that throughout life he would
be required to expend large sums of money for attend-
ants, medicine and medical attention.   The petition,
as it stands, is short, and if the defendant had been suc-
cessful on his motion there would have been nothing
left but the charge of assault and battery at a certain
place on a certain date, whereby plaintiff was knocked
down and his head caused to strike a lead water pipe
with great force, so that he was rendered unconscious
for several hours and received great bodily injuries
which confined him to his bed ever since the day of
said assault, and would suffer great mental anguish
and physical pain and inconvenience, followed by the
prayer for actual and punitive damages.   The petition
alleged that the condition of the plaintiff, as described
in the portion of the petition sought to be stricken out,
was the direct result of the assault and battery, and we
think the court properly overruled defendant's motion.

No argument is made on this point, nor are any authorities cited, so that strictly speaking appellant is not entitled to have the matter considered in the opinion. [Clark v. Carter, 234 Mo. l. c. 99, 136 S. W. 310.]

IV. Complaint is made of the action of the court in permitting plaintiff to amend his petition by interlineation. The petition alleged that plaintiff in falling after being struck by the defendant, struck his head upon a lead water pipe, and the amendment by interlineation merely added before the words "lead water pipe" the words "the stove or," and in another place the words "or other hard substance" are added. This was entirely proper. In the light of present day rules concerning amendments of pleadings we cannot believe that learned counsel have faith in this point; indeed, they have not pressed it or supported it with citation of authorities.

V. Plaintiff in cross-examining the defendant sought to ascertain what his financial standing was and inquired concerning the amount of stock he owned in a certain corporation to which defendant's counsel at first objected but later said they were willing to let the witness tell the whole transaction, and the witness finally read a list of all the stockholders with the amount of stock owned by each. Just before doing so, his counsel stated that they were not objecting to showing his financial condition but were objecting as to who the stockholders were. The plaintiff was not asking for the contents of a record, but was trying to have the defendant state from his own knowledge what stock he owned in the corporation.

VI. Appellant assigns as error the giving of the instructions which the court gave for the plaintiff and of its own motion, and the refusal of the instructions which defendant asked and the court refused to give.

Hoel v. Land Co.

No error is pointed out, no argument made, no authorities cited. However, we have examined all the instructions in connection with the entire record and think the court committed no reversible error in the giving and refusal of instructions.

The order will stand as hereinbefore stated. *Robertson, P. J.*, concurs. *Sturgis, J.*, concurs in all except section I of this opinion.