Steven LEWIS, Plaintiff–Respondent,

v.

James Daly WAHL, Defendant Ad Litem for Douglas Travagliante, Deceased, Defendant–Appellant.

No. 74382.

Supreme Court of Missouri, En Banc.

Nov. 24, 1992.

Rehearing Denied Dec. 18, 1992.

Arthur F. Clark, St. Louis, for defendant-appellant.

Michael D. Stokes, Henry Robertson, St. Louis, for plaintiff-respondent.

## PER CURIAM.

This action for personal injuries by plaintiff Steven Lewis arose out of a collision involving three motor vehicles on Highway FF, a two-lane, north-south highway in Jefferson County. Plaintiff was driving his pickup truck north at a point where the highway curved to his right. As plaintiff entered the curve, defendant Travagliante was driving his pickup truck south and was entering this same curve from the north. Defendant Dulaney was behind the Travagliante vehicle and was also driving south.

Defendant Travagliante was killed in the accident. The only two surviving eyewitnesses were plaintiff and defendant Dulaney. Plaintiff's version of the accident was that when he first saw Dulaney's car it was in the wrong lane (his northbound lane), and it was "really close to the rear end of defendant Travagliante's car, like he was starting to come around him." Plaintiff testified that he was travelling within the speed limit on his proper side of the road when he observed defendant Dulaney in the wrong lane. Plaintiff said he "slammed on the brakes," the wheels locked up, and his car started skidding into the southbound lane where it collided almost head-on with defendant Travagliante's vehicle.

Contrary to plaintiff's testimony, defendant Dulaney testified that, as he entered the curve behind defendant Travagliante, he was in his proper lane and was not attempting to pass. He said both he and Travagliante were going below the speed limit. He testified he heard screeching tires and saw plaintiff's vehicle skating out of control into the southbound lane. Defendant Dulaney crossed the northbound lane and went into the ditch to avoid the collision. Defendant Dulaney testified plaintiff was going "very fast, way beyond the speed limit."

On appeal, defendant James Wahl, defendant ad litem for Travagliante, raises two issues involving impeachment. The first is whether the trial court erred in refusing to allow defendant Dulaney to impeach the

plaintiff by showing that plaintiff had been convicted of speeding on a prior occasion. The second issue raised by appellant is his claim that the trial court erred in allowing the plaintiff to impeach defendant Dulaney with an inconsistent statement contained in Dulaney's cross-claim.

The jury returned a verdict finding fault on the part of all three parties and assessed percentages of fault as follows:

| Defendant Dulaney | 70% |
| Defendant Travagliante | 15% |
| Plaintiff Lewis | 15% |

The jury assessed plaintiff's total damages at $430,000. Defendant Dulaney settled with plaintiff after the case was submitted to the jury but before the verdict was returned. The trial court entered judgment for $51,000 in favor of plaintiff against defendant Travagliante. Defendant Travagliante appealed. The Court of Appeals, Eastern District, reversed. This Court granted transfer.

## I.

## USE OF A SPEEDING TICKET TO IMPEACH PLAINTIFF LEWIS

James Daly Wahl, defendant ad litem for defendant Douglas Travagliante, deceased, claims that the trial court erred in refusing to allow defendant Travagliante to impeach plaintiff by showing plaintiff's prior conviction of the misdemeanor of speeding. Plaintiff's offer of proof shows that plaintiff testified at his deposition that, at some time prior to the accident at issue, he received a speeding ticket on Highway 44 from a state trooper, pled guilty and paid a fine. The conviction of speeding was offered as bearing on plaintiff's credibility as a witness.

The statute relied on by the defendant for his position that it was error to exclude the speeding conviction is § 491.050, RSMo 1986, which was last amended in 1981. The statute provides:

Any person who has been convicted of a *crime* is, notwithstanding, a competent witness; *however, any prior criminal convictions* may be proved to affect his credibility *in a civil or criminal case and, further, any prior pleas of guilty, pleas of nolo contendere, and findings of guilty may be proved to affect his credibility in a criminal case. Such proof may be* either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer.

(Emphasis added to identify words added or modified in 1981.)[1]

Cases of this Court construing § 491.050 prior to the 1981 amendment consistently held that the statute permitted evidence of any felony or misdemeanor conviction, including traffic convictions, to be proved on the question of witness credibility. *State v. Morris*, 460 S.W.2d 624, 629 (Mo.1970); *Hoover v. Denton*, 335 S.W.2d 46, 47 (Mo. 1960); *State v. Cox*, 333 S.W.2d 25, 30 (Mo.1960); *Brown v. Anthony Mfg. Co.*, 311 S.W.2d 23, 28 (Mo. banc 1958); *State v. Johnson*, 293 S.W.2d 907, 911 (Mo.1956); and *State v. Blitz*, 171 Mo. 530, 71 S.W. 1027, 1030 (1903). *See also State v. Busby*, 486 S.W.2d 501 (Mo.1972); *State v. Meyer*, 473 S.W.2d 374 (Mo.1971); *Fisher v. Gunn*, 270 S.W.2d 869 (Mo.1954); and *Forbis v. Associated Wholesale Grocers, Inc.*, 513 S.W.2d 760 (Mo.App.1974). Arguably, the 1981 amendment might serve as a basis from which to undertake a new construction of § 491.050. It may also be argued that the 1981 amendment only served to reinforce the pre–1981 construction of the statute. *See Citizens Elec. Corp. v. Director of Revenue*, 766 S.W.2d 450, 452 (Mo. banc 1989). However, the issue of how the amended statute should be construed need not and is not decided in this case. For the purpose of this opinion, it will be assumed, without deciding, that the trial court erred in excluding the single misdemeanor speeding conviction.

 The question of error does not resolve the question of whether reversal is mandated on this claim. By both statute and rule, an appellate court is not to reverse a judgment unless it believes the error committed by the trial court against

---

1. The word "crime" in the first clause had previously read "criminal offense." The words "however, any prior criminal convictions" previously read "but the conviction." The remaining italicized words were all new in 1981. *See § 491.050*, RSMo 1978.

the appellant materially affected the merits of the action. § 512.160.2; Rule 84.13(b). The exclusion of evidence which has little, if any, probative value is usually held not to materially affect the merits of the case and hence, error in rejecting such evidence is not grounds for reversal. *Johnson v. Lee Way Motor Freight*, 261 S.W.2d 95, 99 (Mo.1953). The exclusion of a single misdemeanor conviction of speeding that is unrelated to any issue other than witness credibility is of such little consequence that no reversal of a judgment will be made on that basis. The first claim, involving impeachment, is without merit.

In *Forbis, supra*, the court of appeals reversed a judgment on the basis of a trial court's exclusion of a single speeding conviction, asserting that the exclusion of the conviction was "contrary to the *absolute right* afforded plaintiff by § 491.050." 513 S.W.2d at 766 (emphasis in original). The court did not consider the equally compelling language of § 512.160.2 and Rule 84.-13(b) forbidding appellate courts from reversing judgments for errors that do not materially affect the outcome of a case. To the extent of any inconsistency with the decision here, *Forbis* is overruled.

## II.

## USE OF PLEADING TO IMPEACH DEFENDANT DULANEY WITH AN INCONSISTENT STATEMENT

### A. *The Facts of the Impeachment*

On direct examination, defendant Dulaney testified that as he entered the curve behind defendant Travagliante they were both going below the speed limit of 55 miles-per-hour. On cross-examination, he repeated that defendant Travagliante "was going 40–50 miles-per-hour on a straight stretch before the curve." Plaintiff then asked defendant Dulaney whether he had ever told anybody that defendant Travagliante failed to stop or slow down and that contributed to cause this collision. Defendant Dulaney answered, "I didn't say that." In response to plaintiff's further cross-examination, defendant Dulaney testified that he was not telling the jury that defendant Travagliante failed to slow down or failed to stop or that his failure caused the collision. He continued his testimony on cross-examination by stating that defendant Travagliante certainly was not driving at a high rate of speed and was not driving at an excessive rate of speed.

Plaintiff's counsel then stated to the court he wished to "refresh the witness's memory"[2] with a cross-claim the witness had filed against defendant Travagliante. Counsel for defendant Travagliante objected,[3] claiming that the pleadings cannot be used to impeach because the parties "have the right to plead in the alternative." The objection was overruled, and plaintiff's attorney was permitted to read the following to the jury:

Defendant Steven Dulaney states that whatever injuries or damages plaintiff may have sustained were directly and proximately caused in whole or in part by

---

2. Plaintiff's counsel incorrectly described the process he was engaging in as refreshing recollection, which, done properly, would require that the witness first indicate that he had some lack of memory. The witness would then be shown the writing to read silently and then asked if, having refreshed his recollection, he now had an independent recollection as to the speed of defendant Travagliante's vehicle. If the witness acknowledged his recollection had been refreshed, he would then be asked to testify from his independent refreshed recollection concerning the speed of the vehicle. In this instance, plaintiff's counsel actually was laying a foundation for impeachment of the witness with an inconsistent statement by confronting the witness with that statement on cross-examination.

3. Plaintiff has not raised the issue of whether defendant Travagliante has standing to raise the issue on appeal of whether defendant Dulaney was improperly impeached. Because defendant Dulaney was not only a party but was also a witness whose testimony was favorable to Travagliánte, it would appear that defendant Travagliante was entitled to object and raise on appeal the issue of whether this witness, whose testimony was favorable to him, was improperly impeached. Usually, the objection that a party is improperly impeached is raised by the impeached party, but in this instance since defendant Dulaney settled with plaintiff while the jury was out, he is not a party to this appeal. Nevertheless, it would appear that defendant Travagliante was entitled to raise this issue on appeal.

the carelessness and negligence of defendant Travagliante in one or more of the following respects: that he carelessly and negligently drove and operated his vehicle at an excessive and high rate of speed for the conditions then and there existing; that he knew or by the highest degree of care should have known that there was a reasonable likelihood of collision in time thereafter to have stopped, swerved, or slackened his speed, sounded a warning, or a combination thereof, but he failed to do so.

Plaintiff's counsel then asked defendant Dulaney whether his lawyer had filed this pleading as a counterclaim on behalf of defendant Dulaney. Defendant Dulaney answered, "I have no idea. This is the first time I have ever heard of it. I did not know that I was counterclaiming. Those certainly are not my statements, sir."

### B. *Summarizing the Rules from our Prior Cases on Impeaching with a Pleading*

 It would be helpful to summarize the various rules this Court has adopted in the past concerning the use of pleadings to impeach with an inconsistent statement or as an admission.[4] It is clear under our cases that a pleading filed by an attorney on behalf of his client is a statement of the client for purposes of using the pleading as an inconsistent statement. *Helton v. Huckeba*, 276 S.W.2d 78, 82 (Mo. banc 1955); Lawson, *Admissibility of Pleadings into Evidence in Missouri*, 27 Mo.L.Rev. 258, 260 (1962). If the client did not have knowledge of the pleading or did not expressly authorize his attorney to file it, he may inform the jury of this fact as an explanation for the inconsistency between the pleading and his testimony, but this explanation is for the jury to consider and

does not bear on admissibility. *Id.* It is said to go to weight and not admissibility.

In considering the admissibility of pleadings as an inconsistent statement, we have generally distinguished between abandoned pleadings and pleadings from other cases on the one hand, and pleadings which are live and active in the present lawsuit on the other. Because the cross-claim used by plaintiff to impeach defendant Dulaney was not abandoned and was a live, active pleading at the time it was used for impeachment, we need not consider whether and to what extent the rules for the use of pleadings may differ with respect to abandoned pleadings or pleadings from other cases.

Of course, active pleadings in the present case, as in any case, function in their traditional manner for their normal purpose in the lawsuit by limiting the issues in dispute. In *Wehrli v. Wabash R.R. Co.*, 315 S.W.2d 765 (Mo.1958), *cert. denied*, 358 U.S. 932, 79 S.Ct. 321, 3 L.Ed.2d 304 (1959), a FELA case for injuries to a signal maintenance man who was injured when his railroad motor car collided at a crossing with an automobile travelling on the highway, the claim of negligence was based upon the fact that the motor car was insulated, so it did not activate the crossing signals. Plaintiff was allowed to read from his petition a paragraph which was admitted by defendant's answer describing the crossing and the fact that defendant established, operated and maintained protective electric signal devices at the crossing for the purpose of preventing collisions between railway equipment and private automobiles. This was a proper use of the pleadings because it informed the jury that these issues were not in dispute and, for purposes of this trial, the parties were precluded from maintaining a contrary or inconsistent position. This is simply the use

---

**4.** Generally, the same principles which are applicable in determining when a pleading may be used as a statement of the pleader for purposes of impeachment, also are applicable in determining when a pleading may be used as an admission under the hearsay rule. If the pleader is a witness in the case in which the pleading is sought to be used, then the statement contained in the pleading, if it otherwise qualifies,

can be used as a prior inconsistent statement. If the pleader is a party in the case in which the pleading is being offered, then if it is offered by a party opponent, it qualifies as an admission under the hearsay rule. If the pleader is both a party and a witness and his testimony is inconsistent with the prior pleading, then the pleading likely qualifies as both an inconsistent statement and an admission under the hearsay rule.

of the pleadings to perform their primary function in the case. *Wehrli*, 315 S.W.2d at 733.

■ There are two basic limitations on the use of pleadings as an inconsistent statement which are potentially applicable in this case. First, pleadings consisting of legal conclusions may not be used; only statements of operative facts may be used. *Wors v. Glasgow Village Supermarket, Inc.*, 460 S.W.2d 583, 590 (Mo.1970); *Macheca v. Fowler*, 412 S.W.2d 462, 465 (Mo.1967); *Giannone v. United States Steel Corp.*, 238 F.2d 544, 548 (3rd Cir. 1956).

■ Second, inconsistent pleadings may not be used to impeach. Rule 55.10 authorizes the pleading of inconsistent claims or defenses. Where the trial testimony of a party supports one version of an inconsistent pleading, allowing the opponent to impeach with a corresponding inconsistent allegation of the pleading would, at the least, inhibit the utilization of Rule 55.10. Therefore, inconsistent pleadings may not be used as impeaching statements. This rule is logical as well as practical because inconsistent statements in a pleading are, by definition, only conditionally asserted to be true, *i.e.*, one or the other is true, not necessarily both. Where the facts in the pleading were asserted under these circumstances, testimony which conforms to one fork of the inconsistent allegation but not to the other is, in fact, not inconsistent.

■ The issue then becomes a matter of identifying what types of pleadings will be viewed as inconsistent under this rule. *Johnson v. Flex–O–Lite Mfg. Corp.*, 314 S.W.2d 75 (Mo.1958), establishes and demonstrates two types of inconsistent pleadings which may not be used for impeachment.[5] First, where there are multiple defendants, a party's pleading cannot be used against one defendant to impeach that par-

ty's testimony against another defendant. A plaintiff is entitled to plead that the negligence of each defendant was the sole cause of plaintiff's damage. Such a pleading is inconsistent because if any single defendant were the sole cause of the injury, then the negligence of the other defendants would not be causal. Under the rule prohibiting the use of inconsistent pleadings to impeach, a party alleging negligence against two or more defendants whose testimony at trial evidences only the negligence of a single defendant may not be impeached by the use of his pleading alleging that the other defendants caused the injury. Thus, where the defendant pleads the negligence of defendant A and the negligence of defendant B were each the sole cause of the accident, the plaintiff's testimony at trial indicating that the cause of the accident was the negligence of defendant A may not be impeached by his pleading alleging that the negligence of defendant B was the cause of the accident.

In *Macheca v. Fowler*, 412 S.W.2d at 464–466, there was a four-car chain collision accident in which each car rear-ended the car ahead of it. The plaintiff was in Car No. 3; the defendant was in Car No. 4. The plaintiff previously had filed petitions against the drivers of Car No. 1 and Car No. 2 alleging they caused the accident by coming to sudden, unsignaled stops. Plaintiff's claims against the drivers of Car No. 1 and Car No. 2 previously had been dismissed. The Court held that plaintiff, whose testimony implicated the fault of the driver of Car No. 4 as the cause of the accident, could not be impeached by his prior pleadings against the drivers of Car No. 1 and Car No. 2. The Court stated:

> The failure of his charges against the other two defendants did not defeat his right to continue to assert against the defendant here the matters alleged as

---

5. This Court's opinion in *Johnson v. Flex–O–Lite Mfg. Corp.*, 314 S.W.2d 75 (Mo.1958), generally describes the type of statements contained in a pleading which may not be used to impeach as statements which "do not possess the characteristics inherent in admissions against interest." While this characterization is true, it is not very helpful in identifying such statements. It is

merely a truism which arises out of the proposition that the same rules which control the use of pleadings for impeachment purposes also control the use of pleadings as an admission under the hearsay rule. The rules discussed herein were disclosed by a careful study of the specific nature of the statements rejected as impeaching statements in *Flex–O–Lite*.

negligence on this defendant's part. Plaintiff had the right to try his case on the issues made against this defendant without regard for the charges previously made against the two involuntarily dismissed defendants.

*Macheca,* 412 S.W.2d at 465. The Court quoted from Wigmore, which assesses the rationale for this rule to essentially what amounts to a mechanical pleading rule:

"[T]he object of each set of pleadings or counts is to raise and to define the separate issues, and any use of the one to aid the other would to that extent defeat this object and prevent the trying of the issue made.

" * * * It is a purely artificial rule, an exception to principle, and is rendered necessary solely by the peculiar theory of common-law pleading; for its fundamental object is 'to separate the law from the facts, and to narrow the latter down to a single issue,' and the statute permitting multiple pleas did not and could not destroy the primary scheme of keeping each issue independent for the purpose of submission to the jury. Thus, in order to secure for each of these issues an independent investigation, it becomes necessary, during that trial, to ignore, artificially, the existence of the other series of pleadings in the same cause." IV Wigmore On Evidence, § 1064(2), pp. 48–49.

*Id.* at 465–66.

In *Macheca,* the Court relied heavily upon *Flex–O–Lite.* In *Flex–O–Lite,* plaintiff, who was injured in a head-on collision involving three vehicles, sued the driver of the car in which plaintiff was riding, the driver of the oncoming automobile and the owner of a truck that was passing the vehicle in which plaintiff was a passenger. Plaintiff alleged each defendant was negligent. One of the issues in the lawsuit was whether the passing truck or the oncoming automobile first collided with the vehicle in which plaintiff was a passenger. At trial, plaintiff's driver testified that the first contact was with the passing truck. The Court refused to allow plaintiff's driver to be impeached with an allegation in his an-

swer that the collision was caused solely by the negligence of the driver of the oncoming car.

■ This rule is not limited to joint defendants but applies to any multiple party circumstance, such as the present case where defendant Dulaney claimed in his answer that plaintiff caused the accident and in his cross-claim that defendant Travagliante caused the accident. These allegations in these pleadings may not be used to impeach defendant Dulaney.

■ *Flex–O–Lite* also holds that where a party alleges disjunctive specifications of negligence, each such specification of negligence is an alternative to the other and may not be used to impeach. In *Flex–O–Lite,* plaintiff's petition claimed that the driver of the automobile in which plaintiff was a passenger was negligent in operating his automobile at a high and dangerous rate of speed under the circumstances; that he failed to keep his automobile under control; and that he failed to stop his automobile. Even though plaintiff's ultimate testimony in *Flex–O–Lite* failed to assert fault on the part of the driver of the vehicle in which plaintiff was a passenger, he may not be impeached with the disjunctive claims of negligence set forth in his petition. In so ruling, we said, "Proof of an averment, made hopefully or with undue optimism at pleading time, sometimes fails to develop at the trial, but a party is not required to prove every fact issue alleged, . . . under pain of being impeached and discredited." *Flex–O–Lite,* 314 S.W.2d at 80. This aspect of *Flex–O–Lite* is really an acknowledgment that in pleading disjunctive allegations of negligence or fault, we recognize that the pleader is merely stating that at this early stage of the litigation, it is an expectation and hope that the evidence will show negligence or fault in one or more of the following respects; there is really no assertion that all or even any of the allegations will ultimately prove to be true. Failure of the pleader's testimony to live up to the expectations of his pleading is not an inconsistency and may not be used to impeach. This limitation on the use of a pleading to impeach is not limited to

pleadings against multiple parties; it is equally applicable to pleadings against a single party.

On the other hand, *Flex–O–Lite*, discusses *Hoffman v. Illinois Terminal R.R. Co.*, 274 S.W.2d 591, 594 (Mo.App.1955), which amply demonstrates a circumstance where a pleading may be used to impeach the pleader's testimony. If there is a significant deviation between the pleader's pleading and his testimony on a purely factual allegation, this inconsistency may be shown for impeachment purposes. In *Hoffman*, the plaintiff pled in his petition that he was thrown from the defendant's bus to the pavement, but in his testimony he said he was thrown from the front door of the bus into a telephone pole, which dazed him and caused him to strike a building with his left hip. This inconsistency is a basic factual allegation concerning what happened at the time of the accident and was proper for impeachment. In *Macheca*, 412 S.W.2d at 466, this Court discussed this exception to the exclusionary rule demonstrated by *Hoffman* and recognized in *Flex–O–Lite*. In *Richardson v. Wendel*, 401 S.W.2d 455, 460 (Mo.1966), this Court allowed the plaintiff to be impeached with her petition against the ambulance driver in a lawsuit where she also sued the driver of another vehicle which collided with the ambulance. The pleading, which alleged that the siren on the ambulance was on and that the traffic signal was red, was contrary to her testimony.

In summary, the general rule is that you can use a pleading to impeach. The exceptions are that (1) you cannot impeach with legal conclusions and (2) you cannot impeach with an inconsistent pleading which includes (a) alternative allegations against multiple parties or (b) disjunctive specifications of negligence or fault against any party.

### C. *Defendant Dulaney was Improperly Impeached*

■■■■■ The cross-claim was improperly used in the present case to impeach defendant Dulaney both because it was an inconsistent pleading against joint parties and because it consisted of disjunctive specifications of negligence and legal conclusions alleging negligence and causation. Since plaintiff's and defendant Dulaney's respective versions of the events were in direct contradiction to each other and because they were the only witnesses to the accident, each such witness's credibility and believability was pivotal in the outcome of the case. Under these circumstances, this error in the impeachment of defendant Dulaney was prejudicial.

The judgment is reversed and the cause is remanded for a new trial.

ROBERTSON, C.J., COVINGTON, HOLSTEIN and BENTON, JJ., and SMART and KENNEDY, Special Judges, concur.

THOMAS, J., concurs in part and concurs in result in part in separate opinion filed.

PRICE and LIMBAUGH, JJ., not sitting because not members of the Court when case was submitted.

THOMAS, Judge, concurring in part and concurring in result in part.

### I.

### USE OF A SPEEDING TICKET TO IMPEACH PLAINTIFF LEWIS

#### A. *A Speeding Conviction is not Relevant to Credibility*

The majority opinion concludes that even if you assume the trial court was in error in refusing to allow defendant Travagliante to impeach plaintiff Lewis by showing his prior conviction of speeding, such error was not prejudicial because the excluded evidence is unrelated to any issue other than the witness's credibility, and on that issue it is of such little consequence that no reversal of the judgment needs to be made in any event. On this basis, the majority declines to rule on the present status of the use of non-serious misdemeanors, such as a traffic violation, to impeach a witness pursuant to section 491.050 as amended in 1981. I concur in the majority's affirmance of the trial court on this issue, but I would reexamine section 491.050 as amended and hold that it no longer mandates the admis-

sion of all criminal offenses. In light of this construction, I would adopt a test for admissibility that would only admit for impeachment purposes convictions, pleas and guilty findings for felonies and serious misdemeanors that are, in fact, relevant to truth telling.

The conviction of speeding was offered as bearing on plaintiff's credibility as a witness, i.e., it was proposed that the jury consider whether the fact that plaintiff Lewis pled guilty to a speeding charge on some prior occasion somehow makes him less likely to be telling the truth under oath when testifying in the present case. In denying the offer of proof, the trial court said, "A speeding conviction is in no way impeaching the integrity or the character of a witness." I agree wholeheartedly. When considered as a question of what is reasonable in light of human experience, the trial court's conclusion is obviously true. However, Missouri has almost a century of decisions interpreting section 491.-050, RSMo, to allow impeachment of witnesses by showing the conviction of a minor misdemeanor even though such a violation is never logically relevant to credibility (hereinafter called non-credibility misdemeanors).

The irrational nature of allowing this form of impeachment becomes even more pronounced when it is considered that all parties agree that the fact that plaintiff was speeding on some prior occasion is totally irrelevant to the issue of whether he was speeding on this occasion. *See State v. Sladek,* 835 S.W.2d 308 (Mo. banc 1992) (use of prior crime evidence to prove that defendant committed the crime charged).

I would uphold the trial court's ruling refusing to allow the appellant to use the speeding conviction for impeachment purposes. I would adopt an evidentiary rule for the Missouri courts which would no longer allow impeachment using a misdemeanor that is not relevant to the witness's credibility.

B. *The Legislative History*

Under the common law, a person who had been convicted of an "infamous crime" was, in the eyes of the law, a totally incompetent witness in any litigation. Until 1895, the Missouri courts sometimes relaxed the common law incompetency rule to allow such a witness to testify under varying circumstances. In 1895, the Missouri legislature put a definitive end to the common law incompetency rule by enacting section 491.050, RSMo.[1] This section read as follows:

> "Any person who has been convicted of a *criminal offense* is, notwithstanding, a competent witness; but the conviction may be proved to affect his credibility, either by the record or by his own cross examination, upon which he must answer any question relevant to that inquiry and the party cross examining shall not be concluded by his answer."

*State v. Blitz,* 171 Mo. 530, 71 S.W. 1027, 1030 (1903), *quoting* Laws 1895, p. 284 (emphasis added). In 1981, the legislature amended section 491.050 to read as follows:

> Any person who has been convicted of a crime is, notwithstanding, a competent witness; however, any prior *criminal convictions* may be proved to affect his credibility in a civil or criminal case and, further, any prior pleas of guilty, pleas of nolo contendere, and findings of guilty may be proved to affect his credibility in a criminal case. Such proof may be either by the record or by his own cross-examination, upon which he must answer any question relevant to that inquiry, and the party cross-examining shall not be concluded by his answer.

There is a second code section, which was pivotal in the Missouri courts' construction of section 491.050 on this issue. Section 556.010, which was enacted in 1835,[2] read as follows:

---

**1.** For simplicity in this opinion, the writer will refer to the code sections by their current section numbers. It should be understood that down through the years there have been various renumberings of the statutes; § 491.050, when originally enacted, was § 4680, Rev.St.1899.

**2.** Originally numbered art. IX, § 39, p. 216, Rev. St.1835.

'The terms "crimes," "offense" and *"criminal offense,"* when used in this or any other statute, shall be construed to mean any offense, as well misdemeanor as felony, for which any punishment by imprisonment or fine or both may by law be inflicted.' ...

(Emphasis added.) The legislature has also amended this statute. By the enactment of the Criminal Code in 1977, effective on January 1, 1979, all the definitions in former Chapter 556 were repealed, including this definition of "criminal offense" in section 556.010. There is no definition in new Chapter 556 for the term "criminal offense" nor for "criminal conviction." However, section 556.016, also enacted as part of the Criminal Code, specifies what constitutes a "crime" and which crimes are categorized as a felony, or as a misdemeanor.[3] This section reads as follows:

Classes of crimes.—1. An offense defined by this code or by any other statute of this state, for which a sentence of death or imprisonment is authorized, constitutes a "crime". Crimes are classified as felonies and misdemeanors.

2. A crime is a "felony" if it is so designated or if persons convicted thereof may be sentenced to death or imprisonment for a term which is in excess of one year.

3. A crime is a "misdemeanor" if it is so designated or if persons convicted thereof may be sentenced to imprisonment for a term of which the maximum is one year or less.

C. *Prior Cases Construing the Statute*

This Court first faced the issue of whether the conviction of a non-credibility misdemeanor could be used to impeach the credibility of a witness in *Blitz,* 71 S.W. 1027, eight years after the legislature had enacted section 491.050. The Court based its decision in *Blitz* on the "criminal offense" terminology. This case involved a defendant charged with grand larceny. The prosecution impeached three of defendant's witnesses by showing one kept a house of prostitution, another had been convicted for frequenting a bawdy house and for "being in adultery" with a woman, and the third had been convicted of fighting. The Court pointed out that prior to the enactment of section 491.050, "it was the settled law of this state that the only convictions of a witness admissible for purpose of impeachment were those for a felony or petit larceny." *Id.* at 1030. The Court quoted the statute and based its holding that a non-credibility misdemeanor may be used for impeachment purposes upon the conclusion that the use of the term "criminal offense" in section 491.050 incorporated the specific definition of that term from section 556.010. The Court stated:

This leads us to inquire, what is a criminal offense? We are not left in doubt as to this. The term "criminal offense" was doubtless used, and will be presumed to have been used, in section [491.050], with full knowledge of the meaning of that term as defined in section [556.010], which provides, "The terms 'crime,' 'offense' and 'criminal offense,' when used in this or any other statute, shall be construed to mean any offense, as well misdemeanor as felony, for which any punishment by imprisonment or fine or both may by law be inflicted." ... This act was not simply declaratory of the well-settled rule "that a prior conviction of a witness had to be as to an infamous crime." If such had been the intention of the legislature, they would have used in section [491.050] the term "infamous crime," instead of "criminal offense," both of which terms are clearly defined by our statute. If the term "infamous crime" had been used, then, clearly, would it [sic] be held as simply declaratory of the well-settled rule; but instead they use the broad term, "criminal offense," which presumptively was used in the sense as defined by the statute.

**3.** The category of an "infraction" is defined in § 556.021. An infraction is any offense defined by the Criminal Code which is not a felony or misdemeanor under § 556.016. The penalties for infractions include fines, forfeitures and other civil penalties but do not include imprisonment. Infraction is an offense but not a crime. This definition is incorporated into the Criminal Code by § 556.061(14).

*Blitz*, 71 S.W. at 1030. Ironically, the *Blitz* Court readily acknowledged that the rule it adopted was both unwise and was a radical change in the common law of evidence. The Court stated:

It is further urged that a penal offense, not infamous, is not necessarily inconsistent with a good moral character. This might furnish a valid reason against the enactment of the law, but furnishes none against declaring it as the law after it is enacted. Had the language of this statute been called to the attention of the learned judges who decided the cases of *State v. Prendible*, 165 Mo. 329, 65 S.W. 559 and *State v. Grant*, 144 Mo. 56, 45 S.W. 1102 [two court of appeals cases which had continued to apply the old rule excluding non-credibility misdemeanors for impeachment despite the enactment of section 491.050], and had the attention of our learned and esteemed Brother Bland been specially called to all the statutes bearing upon this question, doubtless all of them would have said: "We doubt the wisdom of this radical alteration in the rules of evidence, yet it has been so altered by the lawmaking power, and we will declare the law so to be." While we doubt very seriously the wisdom of this sudden and apparently unnecessary change of the long-established rules of evidence, which have been uniformly followed for so many years, doubtless on account of their being based upon that most appropriate foundation of reason and justice, yet, if this change is unwise and was ill-considered, the more strictly it is enforced the sooner its defects will appear, and the sooner will the power that created it bring about its destruction.

*Id.* at 1030–31. Because hindsight is better than foresight, it does not take an accomplished legal historian to observe that the lack of wisdom evidenced by the rule adopted in *Blitz* is exceeded only by the misplaced optimism in the expectation that the legislature would correct the problem and that it would do so sooner if the unwise rule were strictly enforced.

Since *Blitz*, the Missouri courts have periodically added to the line of decisions that acknowledge the fallacy in allowing the use of non-credibility misdemeanors to impeach while stubbornly deferring to the Court's construction of sections 491.050 and 556.-010 in *Blitz* and optimistically expressing hope for a legislative solution that has failed to materialize. *See Forbis v. Associated Wholesale Grocers, Inc.*, 513 S.W.2d 760 (Mo.App.1974) (in a wrongful death action, defendant's conviction, approximately six months prior to the events in this case, for speeding and a conviction of defendant when he was 17 years old for passing in a no passing zone, could come in on cross-examination because section 491.050 confers an absolute right to show prior convictions to impeach the defendant); *Franklin v. Friedrich*, 470 S.W.2d 474 (Mo.1971) (personal injury accident in which defendant was properly impeached with his plea of guilty to a careless and imprudent driving charge, which arose out of the same accident that gave rise to the civil action; this conviction was admitted as both impeaching evidence and as substantive evidence of careless driving because defendant pled guilty to the charge; *see* footnote 5 and the associated text); *State v. Cox*, 333 S.W.2d 25, 29 (Mo.1960) (defendant charged with involuntary manslaughter when the vehicle he was driving, while intoxicated and engaged in a drag race with another vehicle, rear-ended a third vehicle killing both the driver and a passenger; held it was proper to impeach defendant on cross-examination with his prior conviction of operating a motor vehicle without a state driver's license); *Hoover v. Denton*, 335 S.W.2d 46 (Mo.1960) (negligence action arising out of an automobile collision; on cross-examination the Court allowed the defense to question plaintiff about his convictions for careless driving and driving on the wrong side of the road at the time of that same collision); and *Fisher v. Gunn*, 270 S.W.2d 869 (Mo.1954) (plaintiff allowed to impeach defendant in a personal injury action by showing his conviction for careless and imprudent driving also at the time of the collision in which plaintiff was injured).

This is the first case involving the issue of the use of a non-credibility misdemeanor to impeach since the legislative changes in 1979 and 1981. As such, it is this Court's first opportunity in nearly 100 years to correct this "unwise" rule of impeachment. The use of the term "criminal offense" in section 491.050 as defined in section 556.-010 brought us to the irrational rule we are now applying. Therefore, the elimination of that phrase and the repeal of that definition affords an opportunity to correct something that has needed correcting for a long time. In the present case, the majority has avoided ruling on this issue. If we decide in the future to continue our present interpretation of section 491.050, we will not only have missed our chance to correct and improve the law, but we will have created precedent to the effect that the statutory change was not significant. If we stick with that course of action, we will no longer have the excuse of blaming this otherwise inexplicable rule of impeachment on the legislature.

### D. *So What?*

The apparent self-curing nature of the issue under discussion helps to demonstrate the absence of logic and reason in the impeachment rule adopted in the *Blitz* line of cases. The "catch–22"[4] nature of the problem is demonstrated by the majority's decision in this case that any error in allowing the use of a non-credibility misdemeanor to impeach is not prejudicial because speeding has no bearing on credibility. This answer will always be available for this problem. In effect, the majority responds to this issue with the rhetorical question, "So what?"

In one sense this answer is always available in any situation involving the admissibility of irrelevant, nonprejudicial evidence. The rules of relevancy are just common sense, which the jury is sensitive to, even if the law is not. If a judge improperly overrules a hearsay objection, then the jury can and will usually go ahead and use the evidence for its improper purpose. On the other hand, an item that is not relevant to any issue in the lawsuit cannot be made relevant, no matter how non-prejudicial the ruling of the judge to admit such evidence. There is no intelligent way to use nonrelevant evidence. Moreover, the jury will likely ferret out relevancy problems because relevancy is really just common sense about how and to what extent that evidence moves the issue forward on some material issue in the case. So, does this solve the problem? The following section analyzes three common scenarios in which this type of evidence is encountered and attempts to answer the question, "So what?"

To illustrate the range of problems created by allowing the use of a non-credibility misdemeanor to impeach the credibility of a witness, assume impeaching evidence similar to that in the present case. Specifically, assume the defendant in each of the following three lawsuits had a conviction for speeding near Columbia, Missouri, on January 1, 1990. Assume this impeachment evidence is used in three different lawsuits as follows: Lawsuit A is a suit for breach of contract; Lawsuit B is a civil action for personal injuries arising out of an accident which occurred in Kansas City, Missouri, on July 4, 1991, in which it is claimed that defendant was exceeding the 55 mph speed limit on I–29 near the Kansas City International Airport; and Lawsuit C, which is for personal injuries arising out of an accident near Columbia, Missouri, on January 1, 1990, and in which it is claimed defendant was speeding. In Lawsuit C, the speeding conviction sought to be used for impeachment arose out of the very accident in which the plaintiff's personal injuries were sustained.

---

**4.** "Catch–22" is the colloquialism for a problematic situation for which the only solution is denied by the circumstances inherent in the problem. The "catch–22" label originated in the novel, CATCH–22, by Joseph Heller, where the efforts of American pilots stationed on the mythical island of Pianosa in 1944 to obtain a mental discharge from the Air Force were continuously defeated by the rule established by the American military doctors that anyone who knew enough to want to get out of military service demonstrated sufficient mental competency to continue to serve. This was called "catch–22."

Admitting the speeding conviction to impeach the defendant in any of these lawsuits is illogical and irrational. There is no connection between being convicted of a traffic violation, such as speeding, and truth telling. There is nothing about a speeding conviction that indicates any mistaken belief or lack of truthfulness by the witness with regard to his substantive testimony. What small amount of disrespect for the law that may be involved in a traffic violation, such as speeding, is not indicative of a person willing to intentionally swear falsely under oath, i.e., commit perjury.

By and large, the rationale supporting the law of evidence is well grounded in human experience and, given a reasonable explanation, usually makes sense to a jury. As I pointed out above, this is particularly true with respect to rules of relevancy, which really are just common sense. Whenever the rules of evidence deviate from practical experience, jurors will be tempted to treat them as technical obstructions to the search for truth and ignore them. Even more damaging is the fact that illogical rules of evidence may confuse and mislead jurors, who may conclude that they do not understand the issues in the case when they are presented with evidence that does not have a readily apparent, logical use in the lawsuit. All of these risks are present in admitting the speeding conviction in Lawsuits A, B and C.

Admitting the speeding conviction in Lawsuits B and C is not only illogical and confusing but also highly prejudicial. There is a substantial risk that the jury will be led to believe that the speeding conviction is being offered as substantive evidence of speeding on the occasion of the accident in issue. In Lawsuit B, the fact that the defendant was speeding in January of 1990 is in no way probative of the proposition that he was speeding at the time of the accident in July of 1991, and it would not be admitted for that purpose. In the present case, which is like Lawsuit B, the fact that plaintiff Lewis pled guilty to a speeding charge on a prior occasion clearly is not relevant to whether he was speeding at the time of this accident. Because the defendant's main claim of fault against the plaintiff in this accident is speeding, it would have been natural for the jury to misuse this evidence if it had been admitted.

In Lawsuit C, the fact that the defendant was convicted of a traffic offense for speeding at the same time and place where the accident in issue occurred would not be admissible as substantive evidence that he was, in fact, speeding because it is in the nature of hearsay.[5] The trial judge most likely will instruct the jury when the evidence of the conviction is admitted that it

5. If the evidence that defendant was arrested or given a ticket for speeding is offered as substantive proof he was, in fact, speeding, this would constitute inadmissible hearsay (or hearsay conduct) of the arresting officer. *Franklin v. Friedrich,* 470 S.W.2d 474 (Mo.1971). Proof that defendant was convicted in traffic court of speeding at the time of the collision is likewise inadmissible when offered as substantive proof of speeding in Lawsuit C. *Fisher v. Gunn,* 270 S.W.2d 869, 877 (Mo.1954). Although the rationale is usually not stated, the decision of the traffic court is in the nature of hearsay or hearsay conduct because it is the out-of-court statement (or conduct) of the traffic judge, who is not subject to cross-examination in Lawsuit C, offered to prove he concluded, after hearing the evidence in the traffic case, that the defendant was speeding. However, if plaintiff entered a plea of guilty to the speeding charge in traffic court, this is admissible in Lawsuit C because defendant's plea of guilty constitutes an admission under the hearsay rule. *Franklin,* 470 S.W.2d 474. This explains the otherwise unexplained, but common, phenomenon of a defendant, who is involved in an accident that may give rise to a civil damage action, entering a plea of *nolo contendere* (which requires the traffic court to make a finding of guilt, which is not admissible because it is in the nature of hearsay) as opposed to a plea of guilty (which is treated as an admission under the hearsay rule).

If the speeding conviction is admissible for the substantive purpose of proving the speeding, then it should be admitted directly for that purpose and not under the guise of some form of impeachment. If the conviction is admitted only to impeach defendant under the rationale that someone who would violate the speeding law is more likely to also lie under oath than a person who has not violated the speeding law, this use is so illogical and contrary to human experience that it virtually guarantees that the jury will misuse the conviction as substantive proof that the defendant was, in fact, speeding at the time of the accident.

can be used for impeachment but not as proof that the party was speeding at the time of this accident. The distinction between using the speeding conviction to impeach (which use is contrary to common sense) while not using it to prove speeding on the occasion of this accident (which is direct evidence but is also hearsay) is a sophisticated and technical distinction, and it is unlikely that any juror would understand, much less accurately apply, any limiting instruction short of a full-blown lecture on relevancy and hearsay.

Missouri's rule which allows non-credibility misdemeanors to be used for impeachment is further complicated by an exception to the rule. This exception excludes violations of municipal ordinances as opposed to violations of state statutes. The rationale for the exception is that violations of municipal ordinances are in the nature of civil violations and, therefore, are not criminal convictions and are not admissible for impeachment purposes. *Meredith v. Whillock*, 173 Mo.App. 542, 158 S.W. 1061, 1063 (1913). This exception makes perfect sense when one considers the long line of cases in this state holding that a violation of a city ordinance is not a criminal offense for other purposes. *Kansas City v. Neal*, 122 Mo. 232, 26 S.W. 695, 696 (1894) (holding that the Supreme Court was without jurisdiction to enter a writ of error because violation of a city ordinance is not a crime and, thus, not a felony); *Ex parte Hollwedell*, 74 Mo. 395 (1881) (violation of a city ordinance is not a criminal offense; therefore, Article II, Section 12, of the Missouri Constitution, requiring prosecution by indictment or information, is not applicable because an indictment or information is only necessary for a criminal offense); *State v. Muir*, 164 Mo. 610, 65 S.W. 285 (1901) (defendant indicted under Missouri statute for gaming, and defendant had previously been convicted for the same offense under an ordinance of the city of Mexico; because prosecution under a civil ordinance is a civil action, there is no double jeopardy problem when the state acts to enforce a

statute, and both actions may be brought regardless of any particular order).

This exception also makes perfect sense when one views it as an effort by the Missouri courts to avoid the application of section 491.050 and its illogical and inflexible rule allowing impeachment with a non-credibility misdemeanor. However, try to explain to jurors or parties to a lawsuit why it is that if they get a speeding ticket from a city police officer it is not admissible to impeach their credibility, but if they get a speeding ticket from a highway patrolman, this somehow has a bearing upon whether or not they will be truthful witnesses under oath in court.

This distinction between state and municipal convictions leads to the further complicating issue of who has the burden of proving whether the conviction is under a state statute or a municipal ordinance. Where the evidence of the violation is the testimony of the impeached party or an answer to an interrogatory, as opposed to a formal record of the conviction (which would show on its face whether it was a violation of a municipal ordinance or a state statute), the burden is on the impeached party to show a violation of a municipal ordinance. Otherwise, the impeaching party has an absolute right under the statute to admit the impeaching evidence.[6] *Smile v. Lawson*, 506 S.W.2d 400 (Mo.1974), *Forbis v. Associated Wholesale Grocers, Inc.*, 513 S.W.2d at 766.

The difficulty of explaining the striking difference in excluding violations of municipal ordinances while admitting convictions of non-credibility misdemeanors is substantially eased by the solution proposed herein, which would construe the statute to admit for impeachment purposes only those convictions which are relevant to credibility. Nearly all violations of municipal ordinances are, likewise, not relevant to credibility. Therefore, continuing to treat violations of municipal ordinances as inadmissible for impeachment purposes would correspond with the rule proposed herein.

**6.** Plaintiff argues that the impeaching party knows this sort of impeachment will occur and can be prepared to show the violation was of a

state statute; therefore, plaintiff contends the impeaching party should have the burden of proof.

### E. *Construing the Amended Statute*

There are three reasons why I believe this Court is free to construe the current statute in a different manner than the previous version of the statute was construed in *Blitz* and the subsequent line of decisions. First, *Blitz* makes clear that the phrase "criminal offense," as defined in section 556.010, was absolutely fundamental to those decisions. Either of the two legislative changes, i.e., the repeal of section 556.010, effective January 1, 1979, or the removal of the term "criminal offense" from section 491.050 in 1981, was sufficient to release this Court from its prior construction of the statute. Because this is the first time this Court has considered this issue since the amendments to the statutes, I believe it is appropriate to consider the impact of those amendments on our determination of this issue.

I will not speculate as to what my decision would have been in *Blitz* had I been around in 1903. Nevertheless, in construing the successor statute in 1992, I believe I am entitled to benefit from the 90 years of "doubt in the wisdom of this radical alteration in the rules of evidence" and the equally long-expected change by the legislature that never came to pass despite our strict enforcement. If the statute had not been amended and the precedent construing it was recent, I would be reluctant to deviate from that precedent. However, refusing to follow the much-criticized rationale, which this Court used in 1903 in *Blitz*, is significantly different from refusing to follow recent precedent in construing a statute that had not been amended. I believe this Court should seize the opportunity to adopt a more workable, logical rule of impeachment.

Second, it may be contended that the term "crime," as used in the phrase "convicted of a crime" in the first line of section 449.050, incorporates from section 556.010 the definition of "crime" similar to the definition of "criminal offense," which the prior statute incorporated from repealed section 556.010. In my view, "conviction of a *crime*" is used generically and not specifically. The purpose of the amendment in 1981 was to change the result of the holding in *State v. Frey*, 459 S.W.2d 359 (Mo. 1970). In *Frey*, this Court held that a suspended imposition of sentence (SIS) is not a conviction and, therefore, could not be used to impeach. Prior to 1981, the statute required a "conviction" for impeachment. To enlarge what could be shown to impeach to include a SIS, the 1981 amendment added prior pleas of guilty, pleas of *nolo contendere*, and findings of guilt. Since these three additional dispositions have been added to the description of occurrences that can be used for impeachment, "a conviction of a *crime*" is no longer the exclusive impeaching event covered by the statute. The addition of "pleas of guilty, pleas of *nolo contendere*, and findings of guilt," which do not incorporate the term "crime" and thus could not incorporate the definition from section 556.-010, leads me to believe that the term "crime" was used generically and not specifically. This portion of the statute does not speak to the issue of whether non-credibility convictions of crimes, pleas of guilty, pleas of *nolo contendere*, or findings of guilt can be used to impeach. This is the second reason I believe this Court is free to decide this issue without regard to the *Blitz* precedent and the Court's construction of the prior statute.

Third, and perhaps most important, is the last sentence of the statute, which has not been considered by any court, on the issue of whether non-credibility misdemeanors may be used to impeach. This sentence states:

> Such proof may be either by the record or by his own cross-examination, upon which *he must answer any question relevant to that inquiry,* . . . .

§ 491.050, RSMo (emphasis added). The phrase, "[s]uch proof," means proof of a criminal conviction to affect credibility in a civil or criminal case or proof of prior pleas of guilty, pleas of *nolo contendere*, or findings of guilt to affect credibility in a criminal case. The phrase, "that inquiry," refers to the inquiry of whether the conviction, plea or finding of guilt affects the witness's credibility. The statute specifically provides the witness must answer any

question about those convictions, pleas or findings of guilt relevant to credibility. It follows that the contrary is also mandated; i.e., the witness need not answer any question relating to a conviction, plea or finding of fact that is not relevant to credibility. Thus, the statute specifically includes, and always has included, the answer to the issue under discussion—that the witness need only answer regarding convictions, pleas and findings of guilt that are relevant to credibility. Thus, I would hold that the statute mandates exactly what it says; i.e., it only provides for the admission of convictions, pleas and findings of guilt that are relevant to credibility.

### F. What Convictions, Pleas and Findings of Guilt are Relevant to Credibility?

Rather than leave the determination of which criminal convictions, pleas or findings of guilt are relevant to credibility to a case-by-case determination, I would adopt a more specific rule. I would be amenable to the adoption of most of the various rules followed in other jurisdictions that result in the exclusion of non-credibility misdemeanors for impeachment purposes. Some jurisdictions allow only felonies to be used for impeachment, others allow the use of only felonies and misdemeanors involving dishonesty or false statement, while others allow any felony along with misdemeanors involving moral turpitude.[7] I would prefer to adopt a rule that would allow the use of convictions, pleas and findings of guilt of any felony or any misdemeanor involving dishonesty or false statement.[8]

I believe that any conviction, plea or finding of guilt of a felony is relevant to credibility. The law generally recognizes the serious ramifications of a conviction of a felony. Those ramifications encompass such matters as the removal and restoration of civil rights, the right to hold office, the right to vote and the right to hold certain professional licenses following the conviction of a felony. The general public recognizes the significance of a conviction of a felony, and a jury will have no problem in evaluating the weight that should be given to such a conviction, plea or finding of guilt on the witness's credibility.

In the case of misdemeanors, I would limit the convictions, pleas or findings of guilt that can be shown for impeachment to misdemeanors involving dishonesty or false statement. Under this approach, traffic violations, vagrancy, sexual misconduct such as prostitution or solicitation of prostitution (so long as it does not constitute a felony), and simple assault or other violent acts not constituting a felony would probably not be admissible to impeach the witness. Misdemeanors involving the making of a false statement under oath, misdemeanors of obtaining money under false pretenses and misdemeanor larceny would likely be admissible to impeach.

Federal Rule of Evidence 609(a)[9] allows the use of the same categories of crimes, i.e., any felony and any misdemeanors involving dishonesty or false statements. The fact that the federal courts follow a similar rule would afford some guidelines to the extent Missouri courts desire to re-

7. See McCORMICK ON EVIDENCE, 4th ed. § 42; Joseph and Saltzburg, ABA Ass'n, EVIDENCE IN AMERICA, § 43.2. Many courts give the trial court discretion to exclude a conviction for impeachment if the prejudice of admitting the evidence outweighs its usefulness for credibility. Courts often have special rules, including this rule of discretion, for the impeachment of the defendant in a criminal case.

8. See Barnhart, CREDIBILITY IMPEACHMENT BY PRIOR CONVICTION, 36 Mo.L.Rev. 472 (1971), for a discussion of various problems and possible solutions to impeachment with criminal convictions under § 491.050.

9. **RULE 609. Impeachment by Evidence of Conviction of Crime**

(a) **General rule.** For the purpose of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment.

view the cases of another jurisdiction following such a rule. Eight other state courts use this approach.[10] The final decision as to where to draw the line between misdemeanor crimes that involve dishonesty or false statement and other misdemeanors will be left for final decision by the Missouri courts in the future.

I would continue to distinguish between violations of state statutes and violations of municipal ordinances by excluding all convictions of municipal ordinances on the grounds that they are civil in nature and do not constitute crimes. Violations of municipal ordinances are not felonies, so they would not be admissible under the felony rule in any event. The vast majority of the ordinance violations do not involve dishonesty or false statement, so they, too, would be inadmissible even without a special rule for municipal ordinances. Any inconsistency involved in excluding violations of municipal ordinances involving dishonesty or false statement is outweighed by the desirability of maintaining consistency with our other holdings that violations of municipal ordinances are not crimes.

I would uphold the trial court's rejection of plaintiff Lewis' prior conviction for speeding for the same reason the trial court gave, i.e., that a speeding conviction is not relevant to impeaching the credibility of a witness. I would hold that the decision in *Blitz* and its progeny is no longer applicable in light of the amendment to section 449.050 and the repeal of section 556.010.

## II.

### USE OF PLEADING TO IMPEACH DEFENDANT DULANEY WITH AN INCONSISTENT STATEMENT

I concur in Part II of the majority opinion regarding the use of a pleading to impeach, and I concur in the majority's reversal of the judgment of the trial court.

---

**10.** Section 43.2, EVIDENCE IN AMERICA, *supra*, lists Mississippi, New Hampshire, New Mexico, North Dakota, Oklahoma, Utah, Washington, and Wyoming as states that apply Rule 609(a) in substance.